IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>TERRY MICHAEL CROFF,<br><br>Defendant/Movant. | Cause No. CR 15-011-GF-BMM-JTJ<br>CV 16-127-GF-BMM-JTJ<br><br>FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE |

This case comes before the Court on Defendant/Movant Terry Michael Croff's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. He claims trial counsel was ineffective because she failed to tell him to keep the prosecution's discovery confidential and failed to perform reasonably in plea bargaining and debriefing. The Court held an evidentiary hearing on November 8, 2018. The parties have also filed the deposition of trial counsel and, following the hearing, proposed findings and conclusions.

### I. Croff's Claims

The brief filed in support of Croff's amended § 2255 motion asserts his trial counsel, Lindsay Lorang, was ineffective in two respects:

1. She did not tell him the discovery the United States provided in his case had to be kept confidential. He distributed it to others, some of whom were targets of an ongoing investigation. As a result, he did not receive credit for acceptance of responsibility at sentencing. *See,*

1

    *e.g.*, Br. in Supp. Am. § 2255 Mot. (Doc. 67) at 8–10.

  2. Lorang did not explain Croff had to tell everything he knew to get a reduced sentence for cooperating with the United States and did not obtain an immunity agreement so that Croff could speak freely in debriefing without fear his information would be used against him. His debriefing was "like pulling teeth," and he did not tell all he knew. As a result, the United States made a less favorable plea offer and did not seek a reduced sentence. *See, e.g.*, *id.* at 16–17.

Croff's proposed findings and conclusions address only the first claim. The second should be deemed waived. This Court will not address it.

## II. Findings of Fact

1. On February 5, 2015, a grand jury indicted Croff on drug charges. Count 1 charged a conspiracy to possess 500 or more grams of a substance containing methamphetamine with intent to distribute it. This count carried a ten-year mandatory minimum penalty and a maximum of life in prison. *See* 21 U.S.C. §§ 846, 841(b)(1)(A)(viii). Count 2, charging possession with intent to distribute methamphetamine, involved a lesser quantity and carried only a five-year mandatory minimum and a 40-year maximum penalty. *See id.* § 841(a)(1), (b)(1)(B)(viii); *see generally* Indictment (Doc. 1) at 1–4.[1] Attorney Lindsay Lorang was appointed to represent Croff. *See* Order (Doc. 11).

2. Croff had only one prior conviction, a municipal court misdemeanor. *See* Presentence Report ¶ 54. He had no evident experience with drug conspiracy

---

[1] There were seven counts, but Counts 3–7 are not relevant here and will be disregarded.

cases, federal cases, or debriefing.

3. Before trial, Croff was released on conditions. He knew he must "avoid all contact, directly or indirectly, with any person who is or may be a witness," and counsel gave him a list of those people. *See* Evid. Hr'g Tr. (Doc. 91) at 9:25–10:20. The Court's Order specifically named Cody Morris and Stephanie Rider as two people with whom he must not communicate. *See* Order Setting Conditions (Doc. 16) at 2 ¶¶ V–W. Croff also knew he must not "obstruct a criminal investigation; . . . retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court." *Id.* at 3. By the time of the evidentiary hearing, he no longer recalled this restriction, *see* Evid. Hr'g Tr. at 45:21–46:16, but he has never claimed he did not know, on February 25, 2015, what he was signing, *see* Order Setting Conditions at 3.

4. Virtually from the start, Croff intended to plead guilty. AUSA Ryan Weldon told Lorang that Croff could debrief before he pled guilty. If his information was helpful, Weldon would agree to dismiss Count 1, with its ten-year mandatory minimum, and accept a guilty plea to Count 2 for a five-year mandatory minimum. But if Croff's debriefing was tardy or unhelpful, Weldon would only agree to dismiss Count 2, and Croff could plead guilty to Count 1. He could still earn a motion under U.S.S.G. § 5K1.1, but any sentence reduction would start from

ten years, not five.  Weldon's letter to Lorang, which she shared with Croff, summarized, "In short, you spill your guts."  Evid. Hr'g Tr. (Doc. 91) at 48:7–48:13.  Croff understood what was required of him.  *See id*. at 69:20–70:13.

   5.  The discovery produced by the United States included a cover letter stating:

> **Please note that some of the material in this disclosure is labeled "SENSITIVE MATERAIL [sic] — SUBJECT TO L.R. CR 16.4." This material has been labeled 'sensitive' because it contains reports regarding individuals who are confidential informants with protected identities or individuals that are currently under a separate investigation.  The sensitive material in this case can be found in the CD containing Bates Stamped Numbers USAO 000001-000303.  Pursuant to Local Rule 16.4, this material should be accorded special treatment.**

U.S. Sentencing Mem. (Doc. 31) at 4; *see also* Lorang Dep. (Doc. 79-1) at 14:7–15:21.

   6.  When counsel received the discovery, she did not even consider looking up the cited Local Rule because "never in a million years" would she have thought a rule would prohibit her from giving discovery to her client.  *See* Lorang Dep. (Doc. 79-1) at 42:1–44:4.

   7.  Had counsel looked at the Local Rule, she would have read the following:

> **(b)**  Upon written notice and designation of sensitive material in accordance with this rule, the following restrictions shall apply to the designated material:

4

    (1)    Access to documents shall be limited to:

            (A)    attorneys representing the defendant or the government; [and]

            . . .

            (D)    the defendant. Documents shall not be left in the defendant's possession without defense counsel present.

    (2)    Documents shall be used in connection with a matter pending before this court and for no other purpose. Attorneys shall expressly advise every authorized person who reviews the documents as to this limitation on lawful use.

    (3)    It shall be the responsibility of the attorneys of record in this action to employ, consistent with this rule, reasonable measures to control duplication of, access to, and distribution of the documents.

D. Mont. L.R. CR 16.4(b) (Apr. 7, 2014).[2]

8. Counsel "did not know that I was specifically not to leave discovery materials with the defendant on their own." *See* Lorang Dep. (Doc. 79-1) at 44:2–4. Counsel mailed off to Croff the documents marked as sensitive material. She did not advise Croff not to let anyone else look at the documents. *See id.* at 36:11–37:1.

9. In March, Croff attended a debriefing session with "maybe 10 or 12" agents. He "felt really good" about it because he was able to answer all their

---

[2] The Rule went into effect on August 30, 2010, and has not been amended. Subsections (B) and (C) allow access to members of the defense team.

questions. Counsel told him the agents "were pretty pleased," and "[e]verything was looking good." Evid. Hr'g Tr. (Doc. 91) at 23:1–25:12.

10. Croff was interested to review his discovery because other people told him "that's what you need" to "find out . . . what their charges are and how much evidence they got against you." Evid. Hr'g Tr. (Doc. 91) at 11:19–12:3. "You need to get that and see who is saying things and see what they have on you." *Id.* at 18:25–19:1. But, he explained, reading the discovery "[m]ade me sick" because "[t]here was some of it about me, but most of it wasn't," and he was "upset that people were saying things and I—I started trying to figure out who was—they had them all—like, CI numbers,[3] so I was trying to figure out who they were, yeah." *Id.* at 13:4–13:21.

11. Croff told Stephanie Rider he had his discovery. *See* Evid. Hr'g Tr. (Doc. 91) at 64:21–65:8. Word spread. One person, Dustin Deboo, went to see Croff "two or three times" to ask to see it. Croff "told him I didn't have it" the first time. The second time, Croff told Deboo that Deboo was "on a list of people that I wasn't supposed to be around," that is, the no-contact list that Lorang had given him. Deboo returned a third time, but Croff never did show him the discovery. *See id.* at 16:14–17:22.

12. Croff showed the discovery to other people. He showed one page to

---

[3] "CI" means "confidential informant." *See* Evid. Hr'g Tr. at 51:18–53:5.

Latonna Spotted Eagle, because her name was on it, and he showed the discovery to three other people as well, including Stephanie Rider. *Id.* at 17:23–18:3. Rider, like Deboo, was on counsel's no-contact list. *Compare* Evid. Hr'g Tr. at 10:15–10:16 *with id.* at 16:14–18:2. The Court's Order also named Rider as someone with whom Croff must not have contact. *See* Order Setting Conditions (Doc. 16) at 2 ¶ W.

13. In addition to showing Rider the discovery, Croff contacted her to tell her who the CI was. *See* Evid. Hr'g Tr. (Doc. 91) at 66:11–66:22. He did so "[b]ecause I was mad. She [the CI] was ratting me out. You know, I wanted people to know." Evid. Hr'g Tr. at 53:4–53:5. Ultimately, he told "a handful," "[t]hree or four, five" other people who it was because he "wanted to let people know who was ratting me out," "who was telling on me." Sentencing Tr. (Doc. 45) at 55:8–55:18.

14. At some point between the two debriefing sessions, counsel called Croff and told him he "wasn't supposed to be showing people" the information in his discovery. She "was pretty upset about it and said that she needed it back" because Croff should "not be showing people that." Evid. Hr'g Tr. (Doc. 91) at 14:7–14:15.

15. Croff's sharing of the discovery came to light because Stephanie Rider told a case agent about it. *See* Sentencing Tr. (Doc. 45) at 32:12–33:17.

7

16. The second debriefing session convened on April 10. Croff had "a bad feeling." "I thought I was in trouble because I thought it was my fault for talking about . . . [t]he discovery." Evid. Hr'g Tr. (Doc. 91) at 26:25–27:11. Only two agents were present. No one raised the discovery issue, and counsel told Croff not to talk about it. The agents "weren't happy," and one "got very aggressive," accusing Croff of "chain[ing] women up in my basement for drugs"—one of the allegations in the discovery that Croff denied. *Id*. at 27:14–28:24. According to Croff, at one point, an agent "grabbed the tablet, and he slid it across the table at me and threw a pen. He said, 'Give me the names. Give me the names. I want names of all the people that you were selling to and the people that were working for you.'" *Id.* at 29:14–29:18. He said, "If I carry a jacket as a rat in prison, I ain't going to survive. I'm going to end up dead." *Id.* at 29:21–23. He "wouldn't write down any names." *Id.* at 30:13–30:14.

17. Croff knew he "had to spill [his] guts" to case agents if he wanted to plead guilty to Count 2 instead of Count 1, *see* Evid. Hr'g Tr. (Doc. 91) at 69:15–70:3, he knew he did not do that, *id.* at 70:7–70:8, and he knew a guilty plea to Count 2 was off the table as a result, *id*. at 70:9–70:13.

18. Sometime after that, counsel confirmed that "the five-year deal is off the table." If Croff wanted to plead guilty, he would have to plead to Count 1, with its ten-year mandatory minimum. *See id*. at 30:15–31:14. Croff pled guilty to Count

1, with its ten-year mandatory minimum sentence. *See* Minutes (Doc. 23); Plea Agreement (Doc. 24) at 2 ¶ 2.

19. At sentencing, Lorang told Judge Morris that she gave Croff the discovery but "shouldn't have" and that she "failed to communicate to Mr. Croff that he was not to share it with others." Sentencing Sidebar Tr. (Doc. 46) at 4:9–4:19 (sealed). Croff also testified that Lorang did not tell him he should not share the discovery with anyone. *See* Sentencing Tr. (Doc. 45) at 49:14–49:16.

20. At sentencing, the United States introduced testimony showing that Croff provided information about two individuals in the first debriefing session. At the second session, however, Croff denied he even knew one of them. After the agent reminded Croff that the purpose was "for him to be compliant and forthcoming with information," Croff admitted he knew the man and had dealt with him in the past. *See* Sentencing Tr. (Doc. 45) at 35:5–35:22; *see also* Lorang Dep. (Doc. 79-1) at 91:21–92:21.

21. Regarding the advisory guideline calculation, the parties agreed the base offense level was 32. Croff resisted a two-point enhancement for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1) (Nov. 1, 2014), and also sought relief under the safety valve, *id.* § 2D1.1(b)(17); *see also* Def. Sentencing Mem. (Doc. 29) at 7–12. The United States advocated for a two-level upward adjustment for obstruction of justice, *see* U.S.S.G. § 3C1.1, and denial of credit for acceptance of

9

responsibility, *id.* § 3E1.1(a). *See* U.S. Sentencing Mem. (Doc. 31) at 4–7 & n.1; *see also* Def. Reply (Doc. 33) at 2–3.

22. Troubled by Croff's sharing of the discovery, United States District Judge Brian Morris declined to impose the United States' requested enhancement and also declined to award credit for acceptance of responsibility. He found Croff possessed a firearm and failed to meet the debriefing requirement for safety valve relief. As a result, the total adjusted offense level was 34. With a criminal history category of I, Croff's advisory guideline range was 151 to 188 months. The Court varied downward to a sentence of 132 months. *See* Sentencing Tr. (Doc. 45) at 69:25–70:11, 83:4–83:14, 88:15–18; Am. Judgment (Doc. 50) at 2.

### III. Conclusions of Law

1. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail here, Croff must prove (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

2. Croff asserts, and the United States does not contest, that counsel performed unreasonably by mailing all the discovery to Croff and failing to advise

him that he must not let anyone else see it. The Court agrees. Counsel's failure to anticipate that a rule would prevent her from giving discovery to her client was reasonable, because it was grounded in the client's right to know the evidence against him. But counsel received a cover letter plainly intended as a notice of some sort. It cited a local rule, and it referred to "special treatment." Failing to follow up on those warnings was unreasonable.[4] The first prong of the *Strickland* test is met.

  3. The sole contested issue is whether counsel's performance caused prejudice to Croff. He must show a reasonable probability that the outcome of his case would have been more favorable to him if counsel had not mailed the discovery to Croff or at least had told him he must not share it with anyone.

  4. Croff knew he could plead guilty to Count 2, with its lesser mandatory minimum sentence, only if he told agents everything he knew. He lost that opportunity because, among other things, in the second debriefing, he refused to provide the names of all the people who bought methamphetamine from him and all the people who worked for him. Croff was subject to a ten-year mandatory minimum due to his own choice. Counsel's local rule violation played no role in causing Croff to make this choice.

---

  [4] Croff also points out that the District's CJA Plan requires panel counsel to be familiar with the local rules.

11

5. Croff contends he would have received a two-point reduction[5] for acceptance of responsibility, and therefore a shorter prison sentence, but for counsel's local rule violation. He asserts that "Stephanie Rider would not have been in a position to advise 'Croff that he should not be sharing the information in the discovery paperwork.'" Def. Prop. Findings and Conclusions (Doc. 96) at 32 ¶ 16 (citing Sentencing Tr. (Doc. 45) at 33); Sentencing Tr. (Doc. 45) at 32:12–33:4.

6. Croff could not have shown other people the discovery if counsel had not provided a copy. But Croff could have talked about the information conveyed by the discovery if counsel had not provided a copy.

7. It is possible to read L.R. CR 16.4 to restrict *documents* rather than *information*. If the rule is read in this way, Croff did not violate the rule by telling people who he believed the CI was. It is also possible to read L.R. CR 16.4 to restrict access to *documents* and to limit to court proceedings the *use of information* contained in the documents.

8. It is not necessary to choose between these interpretations. The Order Setting Conditions prohibited Croff from retaliating against a witness. Croff's admission that he told others the CI's identity because he was mad and wanted everyone to know who ratted him out was an admission that he intended to

---

[5] A third point is available, but there is no need to decide whether Croff could have received it.

retaliate against the CI for ratting him out. His own statement to the agent at the second debriefing shows that he knew people identified as rats may experience retaliation.

9. The Order Setting Conditions also prohibited Croff from having any contact with Stephanie Rider. And counsel instructed Croff not to have any contact with Stephanie Rider or Dustin Deboo. Croff did not listen to counsel's advice and did not follow the Court's Order.

10. Croff would not have shown his discovery to others if counsel had not sent him his own copy. But there is no reason to suppose Croff would not have discussed the discovery with others, including disclosing the identity of the CI, if counsel had told him he must not discuss what he learned from discovery with others.

11. The fact that Croff showed his discovery to others did not affect his sentence. The fact that Croff's actions appeared to be designed to interfere with the case and/or to endanger the CI affected his sentence.

12. Croff fails to show, by a preponderance of the evidence, that there is a reasonable probability the outcome of the case would have been more favorable to him but for counsel's violation of the local rule.

13. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing §

2255 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

  14.  Although Croff meets the first prong of the *Strickland* test, reasonable jurists would agree that he disregarded both the Order Setting Conditions and counsel's advice and so cannot meet the prejudice prong of the test.  He does not make a substantial showing that he was denied a constitutional right and does not present issues worthy of further debate.  A certificate of appealability is not warranted.  *See* 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, __ U.S. __, 137 S. Ct. 759, 773–74 (2017).

### IV.  Recommendation

  1.  Croff's motion to vacate, set aside, or correct the sentence (Doc. 66) should be DENIED.

  2.  A certificate of appealability should be DENIED.

  3.  The clerk should be instructed to ensure all pending motions in this case and in CV 16-127-GF-BMM are terminated and to close the civil file by entering

judgment in favor of the United States and against Croff.

DATED this 2nd day of July, 2019.

                                           */s/ John Johnston*
                                           John Johnston
                                           United States Magistrate Judge